GAENSLEN and others, Respondents, vs. NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Appellant.

*March 6—April 11, 1939.*

For the appellant there were briefs by *Sam T. Swansen,* general counsel, and *Norman L. Baker,* assistant counsel, both of Milwaukee, and oral argument by *Mr. Baker.*

For the respondents the cause was submitted on the brief of *Olwell & Brady* of Milwaukee.

WICKHEM, J. On February 24, 1924, defendant issued a whole-life policy in the sum of $25,000 upon the life of Frederick J. Gaenslen. The policy contained the following insuring clause:

"The Northwestern Mutual Life Insurance Company (hereinafter called the company) promises to pay at its home office the sum of twenty-five thousand dollars, less any unpaid premium or premiums to the end of the current policy year and any other indebtedness on account of this policy. . . ."

It also contained the following provisions designated in the policy as "nonforfeiture, surrender, and loan provisions:"

"The following provisions shall become operative only after payment of premiums for two full years and no request, revocation or change in connection with such provisions shall be effective until duly made in writing and filed at the home office of the company: . . .
"12b. Upon request of the insured, and assigns if any, made prior to the default in premium payment, which request may be revoked at any time, the premiums thereafter falling due and not paid will be charged as a premium loan with interest at the rate of six per cent per annum, payable annually,

provided the cash surrender value is sufficient to cover such loan. Unpaid interest shall be added to the existing indebtedness and bear interest on the same terms. Any premium loan may be repaid at any time.

"12c. Upon default in payment of premium, unless paid within the grace period, the amount of this policy and any existing dividend additions, less any indebtedness to the company on account hereof, shall be extended automatically as nonparticipating term insurance for such time from the date of default as the then cash surrender value will provide at the net single premium rate for the attained age of the insured according to the American Experience Table of Mortality with interest at three per cent.

"12d. Participating paid-up life insurance for such an amount as the then cash surrender value, plus any policy loan indebtedness, which indebtedness shall remain as a lien against this policy, will provide at the net single premium rate for the attained age of the insured according to the American Experience Table of Mortality with interest at three per cent, may be secured in lieu of automatic extended term insurance upon written request of the insured, and assigns if any, made prior to default in premium payment or within the grace period."

In the application of insured he was asked:

"12a. Do you desire that automatic premium loan provision become operative in accordance with its terms?"

The answer inserted was "Yes."

On February 23, 1937, insured wrote defendant's actuary as follows:

"Dear Sir: I herewith request that my policy No. 1722469 on which premium is due on February 26 in the amount of $755 be changed to conform with the extended term insurance provision as per terms of my policy.

"It is my understanding that if the premium due February 26, 1937, is not paid within the grace period, this policy will continue in force for the full amount as extended term insurance for a period as set forth in your actuarial tables governing a case such as this. . . ."

The actuary replied inclosing a form and stating that:

"Request for extended term insurance having been made, nonpayment of the premium due February 26, 1937, would result in the policy being continued in force as $25,000 term insurance expiring February 19, 1948."

To this the insured responded as follows:

"The undersigned, insured under policy No. 1722469, hereby revokes the request for the automatic premium loan feature as made in the application for this policy and requests that extended term insurance as provided in Paragraph 12c under Nonforfeiture Surrender and Loan Provisions be effective in the event of premium default."

On March 5, 1937, defendant wrote insured that its records had been changed in accordance with his request of February 26th, "that the extended term insurance provision become operative under the above policy in event of default in premium payment."

Insured died on March 11, 1937. On February 26, 1937, the annual premium amounting to $983 became due. There was a dividend applicable in part to the payment of this premium amounting to $228, leaving due and owing $755.

It is plaintiffs' position that since during the grace period following February 26, 1937, insured had elected to take advantage of the extended insurance provision under Paragraph 12c of the policy, the Insurance Company had no right to offset against the $25,000 face value of the policy the $755 net premium due on February 26th. In other words, that having at that time elected to have the policy continued as a paid-up term policy as of February 26, 1937, there was nothing due and nothing to be deducted.

It was defendant's position, (1) that the policy gave insured no power or option to convert the policy to term insurance but simply the power to choose the nonforfeiture provision to be applicable in case he failed to pay the premium within the grace period, and (2) that even if insured had

such power or option, he made no effort to exercise it. We are favored with able and extensive briefs upon the first point, and we do not doubt that the question is important and one to which an authoritative answer might reasonably be desired. However, we conclude that defendant's second contention is sound and that there is no occasion to answer the first question. Referring to the correspondence had between the insured and the company during the grace period, it is perfectly clear from insured's initial letter that he desired the policy to continue in force as extended term insurance only if the premium due February 26th was not paid within the grace period. This written request reached the company and was effective to cancel insured's previous election to have the premiums charged as a premium loan and to substitute therefor the nonforfeiture provision providing for paid-up term insurance. The right of the insured to select and to change the nonforfeiture provision was not subject to the veto of the company nor did it require consent of the insurer for its effectiveness. The rest of the correspondence must be considered in the light of the request by the insured. The amended notice of insured requests that extended term insurance as provided in Paragraph 12c be effective *in the event of premium default.* It is at this point that plaintiffs contend a change occurred in the purposes of the insured. A default is claimed by plaintiffs to have occurred when the premium was not paid on February 26th, the anniversary of the policy, thus supplying the stipulated contingency, and converting the policy as of February 26, 1937, into a single-payment extended term policy. We think that this argument cannot be sustained. Whatever may be the meaning of default in the case of promissory notes or other obligations, and whatever merit there may be to the claim that an insured is in default when he fails to pay upon the anniversary of the policy, there is no question but what the word "default" as used in the latter sense refers to an

event that does not result in a forfeiture or impair the rights of the insured to continue the policy by annual premiums unless there is a failure to pay during the grace period. Hence, it is reasonable to suppose that in making an election for one of the nonforfeiture provisions "in the event of premium default" an insured is referring to such a default as would forfeit his rights to continue the policy by the payment of the annual premiums as theretofore. In view of this, it is only necessary to point out that the insured in this case sent his formal notice of election on the anniversary date of the policy and that the election to take extended term insurance was only to "be effective in the event of premium default." It is evident that the insured contemplated the happening of some future event that he regarded as a default. This would necessarily occur after the anniversary of the policy and after what plaintiffs contend to be a default had occurred. The only default to which he could refer and the one to which his previous correspondence indicated plainly that he did refer was the expiration of the grace period. Had the insured paid the premium before the end of the grace period and survived, and had the company insisted that he had made an irrevocable present election for paid-up term insurance, we suspect that the company's contention would get little consideration from a court.

It is our conclusion that the election of the assured was contingent upon his failure during the days of grace to make payment of his insurance premium and that his application did not constitute the exercise of an option presently to convert the policy in accordance with the provisions of Paragraph 12c. In this view of the matter, it is unnecessary for us to consider, (1) whether during the grace period insured could elect to have the policy presently and unconditionally converted under the terms of Paragraph 12c as of the previous anniversary of the policy, or (2), what amounts to the same thing, whether the nonforfeiture clauses, of which

Paragraph 12c is one, are to take effect only after such a default as would otherwise forfeit the policy and then only to prevent loss by insured of the reserves then applicable to the policy. Making the assumption most favorable to plaintiffs, which is that insured could exercise the option whenever he chose, effective as of the date of his own selection, plaintiffs must fail because the option as exercised was not intended to take effect until the end of the grace period. It follows that at the time of the death of insured, the whole-life policy was in full force and effect, and that the amount of the premium was due and owing at this time. By the express terms of the insuring clause this premium must be deducted from the face value of the insurance.

*By the Court.*—Judgment reversed, and cause remanded with directions for further proceedings in accordance with this opinion.